UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRAYCE BRANTLEY,

Petitioner,                    Case No. 2:17-cv-13634
                               Hon. Mark A. Goldsmith

v.

SHIRLEE HARRY,

Respondent.
_____/

## OPINION & ORDER
## (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING A
## CERTIFICATE OF APPEALABILITY, AND (3) GRANTING PERMISSION TO
## APPEAL IN FORMA PAUPERIS

Brayce Brantley, ("Petitioner"), a Michigan prisoner, filed this action under 28 U.S.C. §

2254. Petitioner was convicted after a jury trial in the Wayne Circuit Court of both first-degree

felony and premeditated murder, Mich. Comp. Laws § 750.316; first-degree home invasion, Mich.

Comp. Laws § 750.110a(2); two counts of assault with intent to commit murder, Mich. Comp.

Laws § 750.83; felon in possession of a firearm, Mich. Comp. Laws § 750.224f; and possession

of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b.  Petitioner was

sentenced to life imprisonment for the murder conviction and lesser terms for his other convictions.

The petition raises thirteen claims: (1) the verdict was against the great weight of the

evidence, (2) a prosecution witness's identification testimony was tainted by a suggestive pretrial

identification procedure, (3) a co-defendant's hearsay statement implicating Petitioner as the

shooter was erroneously admitted at trial, (4) one of Petitioner's life sentences for his first-degree

murder convictions should be vacated, (5) Petitioner was entitled to a pretrial competency hearing,

(6) the presence of six jurors with friends or family in law enforcement denied Petitioner his right

1

to an unbiased jury, (7) the prosecutor committed misconduct during the questioning of a police witness, (8) the trial court erroneously failed to reread testimony requested by the deliberating jury, (9) Petitioner's trial was rendered unfair by the substitution of the trial judge when the verdict was read, (10) defense counsel failed to preserve the foregoing errors, (11) the trial court relied on an erroneous set of facts in sentencing Petitioner, affecting his chances at commutation, (12) the cumulative effect of the foregoing errors rendered Petitioner's trial unfair, and (13) appellate counsel's actions prejudicially conferred jurisdiction on the state court.

The Court denies the petition because Petitioner's claims are without merit. The Court also denies Petitioner a certificate of appealability, but grants permission to appeal in forma pauperis.

## I. BACKGROUND

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendants' convictions arise from a home invasion and shooting at an apartment building in Detroit on March 6, 2014. According to the prosecutor's theory of the case, defendants Brantley and Stoudemire accompanied John Stevenson to an apartment for the purpose of robbing Marquis Walker, who sold marijuana and was a competitor of defendants' friend, Dwan Wilson. While at the apartment, shooting erupted during which Walker was wounded, Walker's fiancée Jenny Vallis was wounded and paralyzed, and Walker's friend Austin Freeman was killed. Witnesses identified Brantley as the shooter. Stevenson pleaded guilty to second-degree murder and testified against Brantley and Stoudemire at their joint trial.

People v. Brantley, 2017 WL 62010, at *1 (Mich. Ct. App. January 5, 2017).

Prior to trial, defense counsel moved to suppress surviving victim Marquise Walker's in-court identification of Petitioner based on a suggestive pretrial identification procedure. The trial court held an evidentiary hearing on the claim. Detroit Police Detective Johnell White testified that Walker identified Petitioner in all three sets of photograph arrays he showed him. On

questioning by the court, White explained that after showing Walker the black-and-white array of six photographs and Walker selected Petitioner, White showed him the single color photograph of Petitioner for confirmation. This occurred before Walker said he was certain that Petitioner was the shooter. 4/23/2015 Tr., Ex. 8 to Rule 5 Filing, at 15-16 (Dkt. 8-8). White acknowledged that this was not his standard procedure for photo arrays. Id. at 17. The court ruled that the fact that Walker was shown more than one photo array did not render the procedure unduly suggestive, and it denied the motion. Id. at 23.

At trial, Dwan Wilson testified that on the date of the incident he lived in a basement apartment on Lansing Street in Detroit. Wilson was home with Petitioner's co-defendant Kimani Stoudemire when Petitioner and John Stevenson came over. 4/29/2015 Tr., Ex. 10 to Rule 5 Filing, at 50 (Dkt. 8-10). A woman came to the door to buy some marijuana, and Wilson sold her some. The woman mentioned that there was someone else selling marijuana upstairs in the building. Petitioner then started talking about going upstairs and robbing them. Petitioner was armed with a handgun. Wilson did not see anyone else armed with a firearm. Petitioner told Wilson that he was going to help Wilson kill someone. Wilson declined, and Petitioner then convinced Stoudamire and Stevenson to go with him.

Petitioner, Stoudamire, and Stevenson then left to go to the upstairs apartment. Ten minutes later, Wilson heard about four gunshots. Wilson later spoke to Stoudamire over the phone, and he told Wilson that they went up and knocked on the door, somebody kicked in the door, and Petitioner went inside shooting. Wilson identified Petitioner and Stoudamire in photo lineup procedures.

Marquise Walker testified that on the date of the shooting he was living in a third-floor apartment on Lansing Street. Walker sold marijuana, chips, pop, cigarettes, and other things from

the apartment. He was in the apartment with Austin Freeman and Jenny Vallis at the time of the incident. At about 6 p.m., there was a knock and Walker found three men standing at his door. Walker recognized two of the men. They asked if he had any marijuana, and Walker answered that he did not. Vallis, who was sitting on a nearby bed, responded that they still had two cigarettes left. Walker was then shot in the shoulder by Petitioner. He did not see the gun until it fired. Petitioner shot him again in the lower abdomen, and Walker stumbled onto the bed.

Walker saw Petitioner and Stevenson come into the apartment, and Petitioner shot Vallis. Walker closed his eyes and continued to hear shots. After the men left, Walker locked the door and saw that Freeman had also been shot and was unresponsive. Vallis could not speak. Walker found the phone and called 9-1-1.

Police officers and EMS arrived, kicked down the door, and took Walker to the hospital . Petitioner identified Petitioner's photograph as the shooter in a set of three photograph arrays. He was certain that three men entered his apartment and that Petitioner was the shooter. 4/29/2015 Tr. at 109-113.

Jenny Vallis testified that she was Walker's girlfriend, and they lived together at the apartment. On the evening of the incident, three men came to their door, and she recognized Stevenson as one of them. She was lying on the bed when one of the men shot her. Vallis was eventually taken to the hospital, but she lost the use of her legs as a result of the shooting.

John Stevenson testified that on the evening of the shooting he was in the basement apartment with Stoudmire and Petitioner. 4/30/2015 Tr., Ex. 11 to Rule 5 Filing, at 14-16 (Dkt. 8-11). They went upstairs to Walker's apartment to rob him. Stevenson testified that Petitioner knocked on the door, and Walker answered. Stevenson asked for marijuana and cigarillos. Walker said he did not have cigarillos, but he had marijuana. When Walker turned to get the marijuana,

Petitioner shot him in the back. Stevenson heard a few more shots being fired. Stevenson went into the apartment, but he did not take anything. Stevenson was arrested about a week later and made a statement to police. He subsequently pleaded guilty to a reduced charge of second-degree murder, with a sentence agreement of fifteen to thirty years.

Based on this evidence, Petitioner and his co-defendant were found guilty by separate juries.

Following sentencing, Petitioner was appointed appellate counsel who filed a claim of appeal. Appellate counsel filed a brief on appeal raising four claims:

I. Defendant-Appellant Brayce Brantley is entitled to a new trial because the verdict was against the great weight of the evidence.

II. Defendant-Appellant Brayce Brantley was denied due process and a fair trial when Marquis Walker was allowed to identify him in court, following suggestive pretrial identification procedures.

III. Defendant-Appellant Brayce Brantley was denied due process and a fair trial when his co-defendant's statement, incriminating Mr. Brantley, was admitted through hearsay over his trial counsel's objection.

IV. Defendant-Appellant Brayce Brantley is entitled to have his case remanded to the trial court for modification of his judgment of conviction and sentence to specify a single conviction of first-degree murder supported by two theories.

Petitioner also filed a supplemental pro se brief on appeal that raised an additional nine claims:

V. Petitioner was denied a fair trial as guaranteed by both state and federal constitutions when the government proceeded against Petitioner without first ascertaining whether or not Petitioner was even competent to stand trial.

VI. Petitioner was denied a fair trial by and through the violation of his guaranteed state and federal constitutional rights to an unbiased and impartial jury, when six jurors were permitted to remain on Petitioner's jury – especially after disclosing during voir dire that they had either close friends or family in the legal profession and or law enforcement.

VII. Petitioner was denied a fair trial as guaranteed under both federal and state constitutions, when the prosecution failed to ensure that Petitioner's due process protections were secured by arguing facts not in evidence, that not only effectively took away Petitioner's right to present a defense, but impermissibly shifted the burden of proof on Petitioner, and made him a witness against himself.

VIII. Petitioner was denied a fair trial as guaranteed under both state and federal constrictions, when the court refused to have critical testimony re-read to Petitioner's deliberating jury as requested.

IX. Petitioner was denied a fair trial as guaranteed under both state and federal constitutions, when Petitioner's judge was substituted on the last day of trial without any explanation on the record, and without first fulfilling the requirements of MCR 2.630 and MCR 6.440.

X. Petitioner was denied a fair trial as guaranteed under both state and federal constitutions, when trial counsel abandoned his duty to protect Petitioner's constitutional rights from the misconduct of both the trial court and the prosecution.

XI. Petitioner was denied a fair trial as guaranteed under both state and federal constitutions, when the sentencing court placed on the record a false set of facts and prejudicial remarks which prejudiced Petitioner when the court made Petitioner the leader of the group of perpetrators, all of which were contrary to the physical facts and evidence presented at trial.

XII. Petitioner was denied his fundamental protections to a fair criminal proceeding by and through the cumulative effect of error that took place at the hands of the trial court, the prosecution, defense counsel and appellate counsel.

XIII. Petitioner reserves the right to raise the issue of constructive denial of appellate counsel should the need arise – depending upon the outcome of the decision of the Court of Appeals – especially where appellate counsel; in raising its four issues; may have given jurisdiction to a court that did not have it from the beginning as argued throughout this pleading; thus subjecting Petitioner to unwarranted prejudice.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. Brantley, 2017 WL 62010. The appellate court remanded the case to the trial court to modify the judgment of sentence to specify a single conviction of first-degree murder supported by two theories: premeditated murder and felony murder. Id.

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising twelve of the thirteen claims that he presented to the Michigan Court of Appeals. Petitioner conceded that Issue IV was mooted by the remand order. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. People v. Brantley, 900 N.W.2d 873 (Mich. 2017).

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003), (quoting Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme

malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington, 562 U.S. at 103 (internal quotation omitted).

### III. ANALYSIS

#### A. Great Weight of the Evidence

Petitioner's first claim asserts that he is entitled to a new trial because the jury's verdict went against the "great weight of the evidence."  Petitioner does not argue here, nor did he argue in the state courts, that the evidence was constitutionally insufficient to sustain the jury's verdict.

A federal habeas court has no power to grant habeas relief on the basis that a state conviction is against the great weight of the evidence.  Cukaj v. Warren, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); see also Nash v. Eberlin, 258 F. App'x. 761, 764, n.4 (6th Cir. 2007) ("a manifest-weight-of-the-evidence argument is a state-law argument"); Artis v. Collins, 14 F. App'x. 387 (6th Cir. 2001) (declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence).  A claim that a verdict went against the great weight of the evidence is simply not one of "constitutional dimension."  Cukaj, 305 F. Supp. 2d at 796.  Petitioner's first claim is therefore not cognizable in this action.

#### B. Identification Testimony

Petitioner's second claim asserts that Walker's trial testimony identifying Petitioner as the shooter was erroneously admitted in violation of due process as the product of an unduly

suggestive pretrial identification procedure. After reciting the controlling constitutional standard, the Michigan Court of Appeals rejected this claim on the merits as follows:

> In the instant case, Brantley does not contend that the other persons in either photo array were not fairly representative of his physical features. And, while Walker was shown a color photograph of Brantley, this occurred after Walker initially identified Brantley in a black and white photo array. Walker did not testify that Detective White assisted, suggested, or persuaded Walker to identify Brantley, or suggested that Brantley was the perpetrator. Walker testified at trial that he was shown a black and white photographic array and that the photograph of Brantley looked like the man who had shot him. He was then shown the same photograph of Brantley, in color, and again identified him as the shooter. Walker was then shown a different photo array, again containing Brantley's photograph, and again he identified Brantley.
>
> At the suppression hearing, White testified that Walker was shown the six-person or "sixpack" black and white photo array, selected Brantley's photo, circled it, wrote "it looks like him" on the array, and initialed it. White denied that he told or suggested to Walker which photograph to select. White testified that after writing up paperwork, he took a color copy of the photograph, showed it to Walker, and told him, "See this is the colored version of that same photo that you said looked like him." Walker then told White that he was one hundred percent positive that Brantley was the person involved. White then showed Walker another "six-pack" array, in color, with the same photo "to show the photo again" and Walker again chose Brantley.
>
> This testimony demonstrates that, regardless of White's actions in confirming Walker's initial choice, Walker affirmatively chose Brantley from the initial, non-suggestive array, in a procedure that had no apparent irregularities. Brantley does not challenge the suggestiveness of this initial identification procedure, which would have been admissible even if the trial court found a problem with the subsequent reaffirmation. Even though Walker appeared more positive in the second identification, Walker did not hesitate in his initial identification. In addition, even if an identification procedure can be considered suggestive, "a suggestive lineup is not necessarily a constitutionally defective one." Kurylczyk, 443 Mich. at 306. Even if the trial court found that White provided commentary to Walker as he showed Walker the larger single photograph, this comment was not "impermissibly" suggestive because it did not give rise "to a substantial likelihood of misidentification" under the totality of the circumstances. Id. When evaluating the likelihood of misidentification, factors that a court will consider are:
>
> > the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated

by the witness at the confrontation, and the length of time between the crime and the confrontation. [Id. (citation omitted).]

Walker had a clear view of Brantley, and spoke with the defendants before the shooting began. He did not express any uncertainty when choosing Brantley from the initial array and Detective White met with Walker approximately one month after the offense. Given these factors, the trial court did not err in finding that Walker's identification of Brantley was not the product of an unduly suggestive identification procedure, particularly where Walker had already identified Brantley in the initial photographic array, which Brantley does not contend was impermissibly suggestive.

Brantley, 2017 WL 62010, at *3-4.

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. Moore v. Illinois, 434 U.S. 220, 227 (1977). To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. Kado v. Adams, 971 F. Supp. 1143, 1147-1148 (E.D. Mich. 1997) (citing Neil v. Biggers, 409 U.S. 188 (1972)). If a defendant fails to show that the identification procedures are impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred; so long as there is not a substantial misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification. See United States v. Hill, 967 F.2d 226, 230 (6th Cir. 1992).

The Michigan Court of Appeals reasonably found that Petitioner failed to demonstrate that Walker's in-court identification was the product of a suggestive pre-trial identification procedure. Walker was initially shown a six-person photographic array. Petitioner does not claim that this first array—that resulted in an identification—was unduly suggestive. While Walker was

thereafter shown a single photograph of Petitioner, the fact that he was exposed to successive identification procedures involving Petitioner did not render the initial identification of him unreliable.  See Williams v. Lavigne, 209 F. App'x. 506, 508 (6th Cir. 2006) (identification procedure, during which witness was shown several lineups and photo arrays, all of which contained defendant's picture, was not unduly suggestive).  Walker did not express any hesitation when he picked Petitioner's photo in the first non-suggestive array.  Showing Walker an individual photo of Petitioner following his identification, at worst, was the functional equivalent of the officer confirming Walker's choice.  Yet, a post-identification affirmation does not render an antecedent lineup procedure unduly suggestive.  See Gregory-Bey v. Hanks, 332 F.3d 1036, 1046-1047 (7th Cir. 2003).  This claim was reasonably rejected by the state appellate court.

### C. Admission of Co-Defendant's Statement

Petitioner next challenges the admission of Wilson's testimony regarding a statement made by co-defendant Stoudemire that Petitioner went into the apartment shooting.  The Michigan Court of Appeals noted that the claim was unpreserved for review because there was no objection made at trial.  But in reviewing the claim for plain error, the state court also found that Petitioner's constitutional rights were not violated because Stoudmire's out-of-court statement was not testimonial:

> The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront witnesses against him and "bars the admission of testimonial statements by a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness." People v. Dendel (On Second Remand), 289 Mich. App. 445, 453 (2010), citing Crawford v. Washington, 541 U.S. 36, 53-54 (2004).

> "A pretrial statement is testimonial if the declarant should reasonably have expected the statement to be used in a prosecutorial manner and if the statement was made under circumstances that would cause an objective witness reasonably to believe that the statement would be available for use at a later trial." Dendel, 289 Mich. App. at 453, citing Crawford, 541 U.S. at 51-52. The Crawford Court

explained that "[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy." Crawford, 541 U.S. at 56. Stoudemire's statements to Wilson were not testimonial. Informal statements made to an acquaintance, such as were made here, are nontestimonial because they are not made during any interrogation, formal legal proceeding, or under circumstances that would "indicat[e] that their 'primary purpose' was to 'establish or prove past events potentially relevant to later criminal prosecution.'" People v. Taylor, 482 Mich. 368, 378 (2008), quoting Davis v. Washington, 547 U.S. 813, 822 (2006). Stoudemire's statements to Wilson were made in confidence, not under circumstances such that Stoudemire "should reasonably have expected the statement to be used in a prosecutorial manner." Dendel, 289 Mich. App. at 453; see also People v. Bennett, 290 Mich. App. 465, 483 (2010) ("our Supreme Court has ruled that a statement made to an acquaintance, outside a formal proceeding, is a nontestimonial statement and may be admitted as substantive evidence at trial pursuant to MRE 804(b)(3)"). Accordingly, the admission of Stoudemire's statements did not result in plain error.

Brantley, 2017 WL 62010, at *4-5.

To the extent that Petitioner argues that the evidence should not have been admitted under Michigan hearsay rules as a statement against interest, his claim is not cognizable on habeas review. Habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in Estelle v. McGuire, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." Id. at 67-68.

As for the federal aspect of the claim, admission of Stoudmire's statement did not implicate Petitioner's rights under the Confrontation Clause. Relevant here, the Confrontation Clause prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify, and the defendant had a prior opportunity for cross-examination. Crawford v. Washington, 541 U.S. 36, 59 (2004). Not every out-of-court statement introduced at trial will implicate the protections of the Confrontation Clause, however. In Davis v. Washington,

12

547 U.S, 813 (2006), the Supreme Court held that the Confrontation Clause applied only to "testimonial" hearsay.  Id. at 823-824;  see also Giles v. California, 554 U.S. 353, 376 (2008) (reiterating that "only testimonial statements are excluded by the Confrontation Clause. Statements to friends and neighbors . . . and statements to physicians in the course of receiving treatment would be excluded, if at all, only by hearsay rules.").

The Michigan Court of Appeals correctly concluded that Stoudmire's statement to Wilson was nontestimonial.  The statement was made from one friend to another in an informal setting soon after the shooting.  No circumstances existed that would suggest that the statement was testimonial in nature.  See United States v. Franklin, 415 F.3d 537, 545-546 (6th Cir. 2005) (hearsay admissions of a codefendant to a friend and confidant are not testimonial).  The determination of the Michigan Court of Appeals was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

### D. Life Sentences

Petitioner next claims that the trial court erroneously imposed two life sentences for one killing after the jury found him guilty of both first-degree felony murder and first-degree premeditated murder.  The Michigan Court of Appeals agreed and remanded the case for resentencing.  Brantley, 2017 WL 62010, at *5.  The claim is therefore moot.

### E. Failure to Hold Competency Hearing

Petitioner next claims that the trial court erred by failing to ensure his competency to stand trial.  Again, after reciting the controlling constitutional standard, the Michigan Court of Appeals rejected the claim on the merits:

> Defendant asserts that he has a documented history of mental illness and had been in special education in school and advised his defense counsel of the same. However, there is no indication that defense counsel brought this to the attention of the court or that defendant in any way displayed behavior that would make the trial

13

> court question his competency. Moreover, defendant has directed this Court to no
> authority suggesting that a history of mental illness or participation in a school's
> special education program automatically raises questions concerning a defendant's
> competency to stand trial. Thus, defendant has failed to overcome the presumption
> that he was competent to stand trial and there has been no demonstration that he
> was denied his constitutional right to a fair trial on this basis.

Brantley, 2017 WL 62010, at *7.

A defendant may not be put to trial unless he or she has a sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding, and a rational as well as a factual understanding of the proceedings against him. Ryan v. Gonzales, 568 U.S. 57, 66 (2013). A state may presume that a defendant is competent to stand trial and require him to shoulder the burden of proving his incompetence by a preponderance of the evidence. Cooper v. Oklahoma, 517 U.S. 348, 355 (1996). The Supreme Court has "repeatedly and consistently recognized that the criminal trial of an incompetent defendant violates due process," Ryan, 568 U.S. at 65 (quoting Cooper, 517 U.S. at 354). Thus, a habeas petitioner may make a procedural due process claim based on competency by alleging that the state trial court failed to conduct a competency hearing after the petitioner's mental competency was put in issue. See, e.g., Wade v. Romanowski, 2016 WL 1573261 (E.D. Mich. April 19, 2016). However, to succeed on the procedural claim, a habeas petitioner must demonstrate that the trial court's decision was "clearly wrong." Franklin v. Bradshaw, 695 F.3d 439, 449 (6th Cir. 2012).

Here, nothing was presented to the state court either prior to or at trial to suggest that there was a question as to Petitioner's competence. A competency hearing is necessary only when a court has a reason to doubt a defendant's competency to stand trial. See United States v. Pitts, 2017 WL 2820944, at *3 (6th Cir. Apr. 28, 2017). "The due-process right to a fair trial is violated by a court's failure to hold a proper competency hearing where there is substantial evidence of a defendant's incompetency." Franklin, 695 F.3d at 447. The question for a reviewing court is

"[w]hether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." Mackey v. Dutton, 217 F.3d 399, 413-414 (6th Cir. 2000) (quoting Williams v. Bordenkircher, 696 F.2d 464, 467 (6th Cir. 1983)). Although Petitioner asserts that he has a history of special education and mental illness, there was no substantial evidence presented to the trial court to raise the issue. Indeed, Petitioner's few interactions with the court at trial were appropriate, responsive, and did not suggest an inability to understand the proceedings against him or to assist in his defense. See 7/8/2014 Tr., Ex. 5 to Rule 5 Filing, at 3-6 (jury trial waiver) (Dkt. 8-5); 4/30/2015 Tr., Ex. 11 to Rule 5 Filing, at 67-68) (Petitioner waives right to testify) (Dkt. 8-11); 5/9/2015 Tr., Ex. 14 to Rule 5 Filing, at 29-31 (Petitioner's allocution at sentencing and colloquy with court) (Dkt. 8-14). The Michigan Court of Appeals reasonably rejected this claim.

### F. Jury Bias

Petitioner next asserts that he was denied his right to a fair and impartial jury by the presence of jurors who indicated that they knew individuals who worked in law enforcement. The Court of Appeals rejected this claim as follows:

> Here, defendant's complaint about the jury is that it contained several people who stated during voir dire that they had close friends or family members that were in law enforcement or the legal profession. Defendant indicates that the relationships raise an inference of prejudice in favor of law enforcement and against him as a criminal defendant. However, defendant has not offered any evidence to demonstrate that he was prejudiced by any of the specific jurors presence on the jury—that is, defendant has offered no evidence to establish that any juror was partial, as is his burden. Miller, 482 Mich. at 550. The trial judge asked each juror, when it was revealed that they had family or friends associated with law enforcement or the legal profession if the relationship would affect their abilities to be fair and impartial, and each juror replied that it would not. The jurors also took an oath to honestly and truthfully try the case and to deliver their decision according to the laws and evidence of the state.
> * * *
> Again, defendant has offered no evidence to indicate that any juror was not, in fact, impartial. The fact that some jurors had friends or family members

associated with law does not automatically evidence partiality. The record here establishes that questions into these jurors ability to remain unbiased were asked, they took an oath and were fairly instructed on their role as jurors. Defendant has not overcome the presumption of juror impartiality.

Brantley, 2017 WL 62010, at *7-8.

"[A] criminal defendant is guaranteed the right to an impartial and unbiased jury," Miller v. Webb, 385 F.3d 666, 672 (6th Cir. 2004) (citing Morgan v. Illinois, 504 U.S. 719, 727 (1992)). The standard for juror impartiality is whether "the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Irvin v. Dowd, 366 U.S. 717, 723 (1961). "Even a juror's expressed doubts about his or her impartiality 'does not necessarily entail a finding of actual bias.'" United States v. Shepard, 739 F.3d 286, 292 (6th Cir. 2014) (quoting Hughes v. United States, 258 F.3d 453, 458 (6th Cir. 2001)). A court must consider the totality of the juror's statements when assessing whether the juror was actually biased against the defendant. Holder v. Palmer, 588 F.3d 328, 340 (6th Cir. 2009).

The record shows that six jurors indicated that they knew individuals or had family members who were employed in law enforcement, or that they had other contact with the legal system. 4/27/2015 Tr., Ex. 9 to Rule 5 Filing, at 27-29, 30, 32, 68, 73, 109 (Dkt. 8-9). Nevertheless, each of these jurors indicated their relationships or other contact with the legal system would not impact their ability to be impartial. Id. at 29, 30-31, 33, 69, 73-74, 109. Nothing in any of the juror's responses indicate any reason to conclude that the jurors were actually biased against Petitioner. Nor did Petitioner offer the state courts with any new evidence tending to indicate that any of the jurors were actually biased against him. The claim is without merit.

**G. Prosecutorial Misconduct**

Petitioner next asserts that the prosecutor rendered his trial fundamentally unfair by eliciting testimony from a police officer that it was not uncommon for a criminal to dispose of a weapon used in a murder. The state appellate court rejected this claim as without merit:

> Defendant contends that the following question posed by the prosecutor to City of Detroit Police Officer Knox was inappropriate:
>
> > Based on your experience, your 19 years, have you found that it's uncommon for someone involved in a murder to get rid of the weapon?
>
> The trial court allowed Officer Knox to answer the question ("No, I don't think it's uncommon."), over defense counsel's objection that the question called for speculation and because the officer's past experience was irrelevant to what happened in this matter.
>
> While defendant's argument on this issue is somewhat difficult to decipher, it appears that defendant is arguing that the prosecutor was, in effect, "testifying" that those involved in murders often get rid of the murder weapon to explain why the weapons recovered from defendant's home were found to be inconsistent with those used in the murder at issue. The prosecutor was not, however, testifying. She was asking Officer Knox a question based on his experience. To the extent that defendant may be arguing that Officer Knox was providing unqualified expert witness testimony, we would note that Officer Knox provided an answer based on his own observations over the years of experience as a police officer and was of a general nature without reference to any technical comparison or scientific knowledge. See, e.g., Co–Jo, Inc v. Strand, 226 Mich. App. 108 (1997).

Brantley, 2017 WL 62010, at *8-9.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." Millender v. Adams, 376 F.3d 520, 528 (6th Cir. 2004) (citing Bowling v. Parker, 344 F.3d 487, 512 (6th Cir. 2003)).  A prosecutor's conduct will violate a criminal defendant's constitutional rights only if it "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of the claim "was so lacking

in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Parker v. Matthews, 567 U.S. 37, 48 (2012) (quoting Harrington, 562 U.S. at 103).

Here, the Michigan Court of Appeals essentially found that the disputed testimony that murderers commonly dispose of the murder weapons was properly admitted. This Court cannot second-guess that determination of state evidentiary law. A prosecutor does not commit misconduct by offering admissible testimony. Day v. Warren, 2017 WL 4957449, at *23 (E.D. Mich. Nov. 1, 2017). Accordingly, this claim was reasonably rejected by the Michigan Court of Appeals.

### H. Failure to Reread Testimony

Petitioner next asserts that the trial court erroneously failed to reread the testimony of two witnesses at the request of the deliberating jury. The claim is not cognizable. The decision whether to reread testimony is "uniquely committed to the discretion of the trial court." United States v. Crowley, 285 F.3d 553, 561 (7th Cir. 2002); see also Gibbs v. Bolden, 65 F. App'x. 519, 521-522 (6th Cir. 2003). Because there is no clearly established Supreme Court law creating a constitutional right to have testimony reread to a jury, the rejection of this claim by the state court is insulated from habeas relief under § 2254(d)(1). See Friday v. Straub, 175 F. Supp. 2d 933, 939 (E.D. Mich. 2001).

### I. Substitute Trial Judge

Petitioner asserts that his trial was rendered fundamentally unfair by the substitution of trial judges for one of the trial dates without a record of the reasons for the substitution being made. Petitioner notes that Judge Walker was the principal trial judge, but that Judge Hathaway presided over the case on May 5, 2015, the date the jury returned its verdict. The claim is not cognizable

in this action because Petitioner had no clearly established constitutional right to have a single judge preside over his entire trial.  See, e.g., Timmons v. Rapelje, 2013 WL 6048995, *37-38 (E.D. Mich. Nov. 15, 2013); Taylor v. Withrow, 2003 WL 345362, *9 (E.D. Mich. Jan. 29, 2003).  The claim is therefore without merit.

**J. Ineffective Assistant of Counsel**

Petitioner asserts that his counsel's failure to preserve any of the foregoing allegations of error.  The Michigan Court of Appeals rejected the claim as follows:

> Defendants' claims of ineffective assistance of counsel are premised entirely on his prior allegations of error. However, as previously discussed, we find none of defendant's claims of error to have merit. Counsel is not ineffective for failing to make futile objections. People v. Milstead, 250 Mich. App. 391, 401 (2002). And, as also previously discussed, there was overwhelming evidence of defendant's guilt, predominantly from the victims of the shooting. Defendant has thus failed to demonstrate that but for any error by counsel, the result of the proceeding would have been different. Petri, 279 Mich. App. at 410-411.

Brantley, 2017 WL 62010, at *11.

This decision complied with established law. Where the underlying claims lack merit, as here, counsel is not ineffective for failing to raise the issues below.  See Shaneberger v. Jones, 615 F.3d 448, 452 (6th Cir. 2010) (citing Greer v. Mitchell, 264 F.3d 663, 676 (6th Cir. 2001)).

**K. Sentencing Facts**

Petitioner asserts that the trial court relied on misinformation in imposing sentence when it referred to evidence that he was the shooter when he denied that allegation during sentencing. Though Petitioner acknowledges that he was subject to a mandatory life sentence regardless of the specific circumstances of his first-degree murder conviction, he asserts that the trial court's remarks might be used against him in a possible future commutation proceeding.

The claim is not cognizable.  In Manning v. Unknown Parties, 56 F. App'x. 710, 711 (6th Cir. 2003), the Sixth Circuit explained:

The possibility of release upon reprieve, commutation, or pardon depends entirely on the discretion of the governor. <u>See</u> Mich. Const.1963 art. 5, § 14; Mich. Comp. Laws § 791.244. Just as the presence of a parole system does not give rise to a constitutionally protected liberty interest in parole, <u>see</u> <u>Bd. of Pardons v. Allen</u>, 482 U.S. 369, 373 (1987); <u>Greenholtz v. Inmates of Neb. Penal and Corr. Complex</u>, 442 U.S. 1, 7 (1979), the power of the governor of Michigan to grant a reprieve, commutation, or pardon does not create a liberty interest in such release.

Because Petitioner does not have a constitutionally protected interest in a sentence commutation, this claim is not cognizable in this action.

### L. Cumulative Error

Petitioner next contends that he is entitled to habeas relief because of cumulative error. The cumulative weight of alleged constitutional trial errors in a state prosecution does not warrant federal habeas relief because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. <u>Moore v. Parker</u>, 425 F. 3d 250, 256 (6th Cir. 2005). Petitioner is not entitled to habeas relief on the grounds of cumulative error. <u>Id</u>.

### M. Appellate Counsel

Petitioner's final claim seems to assert that his appellate counsel's actions in the Michigan Court of Appeals may have conferred jurisdiction over the case—which somehow worked to Petitioner's disadvantage. The determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of the state courts, not the federal courts. <u>Wills v. Egeler</u>, 532 F. 2d 1058, 1059 (6th Cir. 1976); <u>Daniel v. McQuiggin</u>, 678 F.Supp. 2d 547, 553 (E.D. Mich. 2009).

As none of Petitioner's claims merit relief, the petition will be denied.

### IV. CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this decision, the Court must determine whether to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court finds that reasonable jurists would not debate the resolution of Petitioner's claims because they are devoid of merit. The Court will therefore deny a certificate of appealability.

If Petitioner chooses to appeal the Court's decision, however, he may proceed in forma pauperis because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. CONCLUSION

Accordingly, the Court denies with prejudice the petition for a writ of habeas corpus, denies a certificate of appealability, and grants permission to appeal in forma pauperis.

SO ORDERED.

Dated:  May 24, 2019                s/Mark A. Goldsmith
     Detroit, Michigan            MARK A. GOLDSMITH
                                United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 24, 2019.

                                s/Karri Sandusky
                                Case Manager